Slip Op. 15-12

### UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| NTN BEARING CORPORATION OF AMERICA, et al., |
| Plaintiffs, |
| and |
| JTEKT CORPORATION, et al., |
| Plaintiff-Intervenors |
| v. |
| UNITED STATES, |
| Defendant, |
| and |
| THE TIMKEN COMPANY, |
| Defendant-intervenor. |

Before: Timothy C. Stanceu, Chief Judge

Court No. 10-00286

### OPINION AND ORDER

[Affirming in part and remanding in part the final results of an administrative review of an antidumping duty order and deciding to grant relief on a claim contesting a rule pertaining to the issuance of liquidation instructions following completion of the review]

Dated:February 3, 2015

*Diane A. MacDonald*, Baker & McKenzie, LLP, of Chicago, IL, for plaintiffs NTN Bearing Corp. of America, NTN Corp., NTN Bower Corp., American NTN Bearing Manufacturing Corp., NTN-BCA Corp., and NTN Driveshaft, Inc.  With her on the brief was *Kevin M. O'Brien*.

*Neil R. Ellis* and *Dave M. Wharwood*, Sidley Austin LLP, of Washington, DC, for plaintiff-intervenors JTEKT Corp. and Koyo Corp. of U.S.A.

*L. Misha Preheim*, Trial Attorney, and *Claudia Burke*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States.  With them on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne*

*E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director.  Of counsel on the brief were *Shana Hofstetter* and *Daniel J. Calhoun*, Attorneys, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

     *Geert M. De Prest*, Stewart and Stewart, of Washington, DC, for defendant-intervenor The Timken Company.  With him on the briefings were *Terence P. Stewart* and *Lane S. Hurewitz*.

     Stanceu, Chief Judge:  Plaintiffs (collectively, "NTN")[1] contest the final determination ("Final Results") issued by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"), to conclude a set of administrative reviews of antidumping duty orders on ball bearings and parts thereof ("subject merchandise") from France, Germany, Italy, Japan, and the United Kingdom.  Am. Compl. ¶ 1 (Oct. 17, 2011), ECF No. 66 ("Am. Compl.").  *See Ball Bearings and Parts Thereof From France, Germany, Italy, Japan, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, Final Results of Changed-Circumstances Review, and Revocation of an Order in Part,* 75 Fed. Reg. 53,661 (Int'l Trade Admin. Sept. 1, 2010) ("*Final Results*").  The twentieth administrative reviews cover entries of subject merchandise made during the period of May 1, 2008 through April 30, 2009 ("period of review" or "POR").  *Id.* at 53,661.

     Plaintiffs assert claims stemming from the antidumping duty order on subject merchandise from Japan.  In Count I, they challenge the Department's use of "zeroing" methodology in the twentieth administrative reviews, according to which Commerce assigned to

---

[1] The plaintiffs are NTN Bearing Corp. of America, NTN Corp., NTN Bower Corp., American NTN Bearing Manufacturing Corp., NTN-BCA Corp., and NTN Driveshaft, Inc. (collectively "NTN").  Am. Compl. 1 (Oct. 17, 2011), ECF No. 66.  NTN Corp. is a Japanese manufacturer and exporter of ball bearings and parts thereof.  Am. Compl. ¶ 6.  NTN Bearing Corp. of America, American NTN Bearing Manufacturing Corp., NTN-BCA Corp., NTN Bower Corp., and NTN Driveshaft, Inc. are U.S. importers of Japanese ball bearings.  Am. Compl. ¶¶ 7-11.  These importers are wholly-owned subsidiaries of NTN USA Corp., which is a wholly-owned subsidiary of NTN Corp.  Am. Compl. ¶ 12.

U.S. sales made above normal value a dumping margin of zero, instead of a negative margin,

when calculating weighted-average dumping margins.  Am. Compl. ¶¶ 19-26.  In Count II, they

challenge the Department's practice of issuing liquidation instructions to U.S. Customs and

Border Protection ("Customs" or "CBP") fifteen days after publication of the final results of an

administrative review (the "fifteen-day rule").  Am. Compl. ¶¶ 27-32.  Count III alleges that

Commerce made clerical and other methodological errors when calculating NTN's credit

expenses by failing to use updated data from NTN's supplemental questionnaire.  Am. Compl.

¶¶ 33-35.  Plaintiff-intervenor JTEKT Corp., a Japanese producer and exporter of ball bearings,

and its affiliated importer, Koyo Corp. of U.S.A., (collectively, "JTEKT") join in the "zeroing"

claim alleged in Count I of the complaint.  Mot. of Pl.-Intervenors JTEKT Corp. & Koyo Corp.

of U.S.A. for J. on the Agency R. 1 (Dec. 16, 2011), ECF No. 70 ("JTEKT's Mot.").

        Before the court are NTN's and JTEKT's motions for judgment on the agency record.

Pls.' Mot. for J. on the Agency R. (Dec. 16, 2011), ECF No. 69 ("NTN's Mot."); JTEKT's Mot.

Also before the court is a request by defendant United States for a partial remand of this case to

allow Commerce to correct errors relating to NTN's credit expenses, which are the subject of

Count III of the complaint.  Def.'s Opp'n to Pls.' & Pl.-Intervenors' Mots. for J. Upon the

Agency R. 30 (Mar. 16, 2012), ECF No. 76 ("Def.'s Opp'n").  As discussed herein, the court

affirms the Department's use of zeroing, grants defendant's request for a voluntary remand, and

concludes that the fifteen-day rule is unlawful as applied to NTN in this case.

## I. BACKGROUND

        The court's prior opinions provide background, which is supplemented herein.  *See NTN*

*Corp. v. United States*, 34 CIT __, 744 F. Supp. 2d 1370 (2010) ("*NTN I*") (denying JTEKT's

motion for a preliminary injunction); *NTN Corp. v. United States*, 35 CIT __, Slip Op. 11-129

(Oct. 17, 2011) ("*NTN II*") (granting plaintiffs' motion for leave to amend the complaint); *NTN*

*Corp. v. United States*, 36 CIT __, Slip Op. 12-75 (June 4, 2012) ("*NTN III*") (staying case).

<u>1.  The Twentieth Administrative Reviews of the Orders</u>

Commerce first published the antidumping duty order on ball bearings and parts thereof

from Japan (the "Order") in 1989.  *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller*

*Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan*, 54 Fed. Reg. 20,904

(Int'l Trade Admin. May 15, 1989).  On June 24, 2009, Commerce initiated the twentieth

periodic administrative reviews of the orders on subject merchandise from various countries,

which included a review of the Order on subject merchandise from Japan that is at issue in this

case.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests*

*for Revocation In Part*, 74 Fed. Reg. 30,052 (Int'l Trade Admin. June 24, 2009).  On

April 28, 2010, Commerce published its preliminary determination.  *Ball Bearings and Parts*

*Thereof From France, Germany, Italy, Japan, and the United Kingdom: Preliminary Results of*

*Antidumping Duty Administrative Reviews, Preliminary Results of Changed-Circumstances*

*Review, Rescission of Antidumping Duty Administrative Reviews in Part, and Intent To Revoke*

*Order In Part*, 75 Fed. Reg. 22,384 (Int'l Trade Admin. Apr. 28, 2010).  Commerce selected

only two Japanese exporter/producers for individual examination, NTN Corp. and NSK Ltd.  *Id*.

at 22,385.  JTEKT Corp. was one of the respondents not selected for individual examination.

*Calculation of the Margin for Respondents Not Selected for Individual Examination* 1 n.1

(Aug. 26, 2010) (Japan Public Admin.R.Doc. No. 145).

On September 1, 2010, Commerce published the Final Results, assigning a 13.46%

dumping margin to NTN Corp., an 8.48% margin to NSK Ltd., and a simple average of those

two margins, 10.97%, to companies not selected for individual examination, including JTEKT

Corp. *Final Results*, 75 Fed. Reg. at 53,662; *see also Issues & Decision Mem. for the*

*Antidumping Duty Admin. Reviews of Ball Bearings & Parts Thereof from France, Germany,*

*Italy, Japan, & the United Kingdom for the Period of Review May 1, 2008, through*

*April 30, 2009*, A-100-001, ARP 04-09 (Aug. 26, 2010) (Various Countries Public

Admin.R.Doc. No. 31), *available at*

http://enforcement.trade.gov/frn/summary/MULTIPLE/2010-21839-1.pdf (last visited

Jan. 28, 2015) ("*Decision Mem.*").  In the Final Results, Commerce also stated its intention to

issue implementing liquidation instructions to Customs fifteen days after the publication date of

the Final Results.  *Final Results*, 75 Fed. Reg. at 53,663.

<u>2.  Proceedings Before the Court</u>

NTN commenced this action by filing a summons and a complaint on

September 16, 2010.  Summons, ECF No. 1; Compl., ECF No. 2 (first complaint).  On

October 5, 2010, the court granted a consent motion by The Timken Company ("Timken") to

intervene as a defendant in this case.  Order, ECF No. 24.  On October 12, 2010, the court

granted a consent motion by JTEKT Corp. and Koyo Corp. of U.S.A. to intervene as plaintiffs.

Order, ECF No. 34.

On November 22, 2010, defendant moved to dismiss Counts I and III of the complaint for

failure to state a claim upon which relief can be granted and Count II of the complaint on the

ground that NTN lacked standing to challenge the Department's fifteen-day liquidation rule.

Def.'s Mot. to Dismiss 1, 3-10, ECF No. 39.  On October 17, 2011, the court granted NTN's

motion to amend its complaint and denied as moot defendant's motion to dismiss.  *NTN II*,

35 CIT at __, Slip Op. 11-129 at 4.  *See* Mot. for Leave to File an Am. Compl. (Feb. 1, 2011),

ECF No. 54.  The court deemed as filed an amended complaint that NTN had filed along with its

motion to amend its complaint.  *NTN II*, 35 CIT at __, Slip Op. 11-129 at 4.  *See also* Am.

Compl.  Defendant and defendant-intervenor filed answers to the amended complaint.  Def.'s

Answer (Oct. 28, 2011), ECF No. 67; Answer to Am. Compl. (Nov. 7, 2011), ECF No. 68.

On December 16, 2011, NTN and JTEKT submitted their motions for judgment on the

agency record.  NTN's Mot. 1; Pl.'s Br. in Supp. of its Mot. for J. on the Agency R., ECF

No. 69-1 ("NTN's Br."); JTEKT's Mot. 1; Mem. of P. & A. in Supp. of Mot. of Pl.-Intervenors

JTEKT Corp. & Koyo Corp. of U.S.A. for J. on the Agency R., ECF No. 70 ("JTEKT's Br.").

On March 16, 2012, the United States and Timken submitted responses opposing the motions for

judgment on the agency record.  Def.'s Opp'n 1; Resp. Br. of the Timken Co. Opposing the

Rule 56.2 Mots. of NTN & JTEKT, ECF No. 78 ("Timken's Opp'n").

On June 4, 2012, the court stayed this action pending final resolution of all appellate

proceedings in *Union Steel v. United States*, CAFC Court No. 2012-1248, which involved a

claim similar to the claim challenging zeroing that is presented in this action.  *NTN III*, 36 CIT

at __, Slip Op. 12-75 at 3-4.  On April 16, 2013, the Court of Appeals for the Federal Circuit

("Court of Appeals") issued a decision in *Union Steel v. United States*, 713 F.3d 1101, 1103

(Fed. Cir. 2013) ("*Union Steel II*"), in which it affirmed the use of zeroing in an antidumping

administrative review.  After the stay was lifted, the court issued, on June 5, 2014, an opinion

denying as moot a motion by plaintiffs and plaintiff-intervenors requesting an extension of the

stay pending the resolution of all appeals in *NSK Corp. v. U.S. Int'l Trade Comm'n*,

716 F.3d 1352 (Fed. Cir. 2013), a case concerning the sunset reviews of the underlying

antidumping duty orders.  *See* Order, ECF No. 95; Notice of Supplemental Authority

(June 4, 2014), ECF No. 94.  On August 4, 2014, NTN filed a reply to defendant's and

defendant-intervenor's briefs in opposition to the motions for judgment on the agency record.

*See* Pls.' Reply Br., ECF No. 96.

## I. DISCUSSION

### A. Jurisdiction and Standards of Review

The court has subject matter jurisdiction under section 201 of the Customs Courts Act of

1980, 28 U.S.C. § 1581(c), to adjudicate Counts I and III of the complaint.[2]  As provided in

28 U.S.C. § 1581(c), the court has jurisdiction to review actions commenced under section 516A

of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a, including an action contesting a final

determination issued in an administrative review conducted under 19 U.S.C. § 1675(a).  *See id*.

For the claims contesting the Final Results, the court is directed to "hold unlawful any

determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law."  Tariff Act § 516A, 19 U.S.C.

§ 1516a(b)(1)(B)(i).

The court has subject matter jurisdiction under 28 U.S.C. § 1581(i) to adjudicate

plaintiffs' claim in Count II.[3]  This claim, which challenges the Department's application of the

_____

[2] Unless otherwise specified, all statutory citations herein are to the 2006 edition of the
United States Code.

[3] This Court held in *SKF USA Inc. v. United States*, 31 CIT 405, 409 (2007) ("*SKF I*"),
that jurisdiction over a claim challenging an application by the U.S. Department of Commerce
("Commerce" or the "Department") of a prior version of the fifteen-day rule is not available
under 28 U.S.C. § 1581(c).  This Court explained that "[t]he language in the Federal Register
notice to which plaintiffs direct the court's attention is a statement of a *present* intention on the
part of Commerce to take, within fifteen days of the publication of the Final Results, the *future*
action of instructing Customs to liquidate, in accordance with the Final Results, the affected
entries."  *Id.* (emphasis in original).  This Court reached the same conclusion in subsequent
actions challenging the Department's revised fifteen-day rule (at issue in this case), according
to which the Commerce issues liquidation instructions fifteen days *after* publishing the final results
of an administrative review.  *See, e.g. SKF USA Inc. v. United States*, 33 CIT 1602, 1614, 659 F.
(continued . . .)

fifteen-day rule, arises under section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 702.  *See* 28 U.S.C. § 1581(i); *Shinyei Corp. of Am. v. United States,* 355 F.3d 1297, 1304-05

(Fed. Cir. 2004); *Consol. Bearings Co. v. United States,* 348 F.3d 997, 1002-03 (Fed.

Cir. 2003)).  For the claim challenging the fifteen-day rule, the court must "hold unlawful and set

aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law."  APA § 706(2), 5 U.S.C. § 706(2);

28 U.S.C. § 2640(e).

### B.  The Department's Use of Zeroing in the Final Results

In an administrative review of an antidumping duty order, Commerce determines both the

normal value and the export price ("EP"), or, if the EP cannot be determined, the constructed

export price ("CEP"), for the subject merchandise under review.  Tariff Act § 751, 19 U.S.C.

§ 1675(a)(2)(A)(i).  Commerce then determines a dumping margin by calculating the amount by

which the normal value exceeds the EP or CEP.  *Id.* §§ 1675(a)(2)(A)(ii), 1677(35)(A).  When

Commerce determines a dumping margin using zeroing, as it did in the twentieth administrative

reviews, it assigns a value of zero, not a negative margin, where the normal value is less than the

EP or CEP.  *Union Steel II*, 713 F.3d at 1104.  Commerce then aggregates these margins to

calculate a weighted-average dumping margin.  19 U.S.C. § 1677(35)(B).

Joined by JTEKT, NTN claims that the Department's use of the zeroing methodology in

the twentieth administrative review of the order on Japan was contrary to law.  NTN's Br. 7-18;

JTEKT's Br. 6-9.  Based on binding precedent, the court rejects this claim.

---

(continued . . .)

Supp. 2d 1338, 1347-48 (2009) ("*SKF III*"); *NTN Corp. v. United States*, 34 CIT __, __, 744 F.
Supp. 2d 1370, 1374-75 (2010).

The decision of the Court of Appeals in *Union Steel II* affirmed the Department's use of

zeroing in circumstances the court considers analogous to those presented by this case.  *See*

*Union Steel II*, 713 F.3d at 1103.  *Union Steel II* held permissible the Department's construction

of the antidumping duty statute that authorized the use of zeroing in administrative reviews of an

antidumping duty order despite the Department's discontinuation of the practice in antidumping

investigations.  *Id.*  In the litigation that culminated in *Union Steel II*, the Court of International

Trade ("CIT"), in light of two intervening decisions by the Court of Appeals that had called into

question the Department's statutory construction, reviewed the explanation for the Department's

statutory construction provided in a voluntary remand redetermination.  *Union Steel v. United*

*States*, 36 CIT __, __, 823 F. Supp. 2d 1346, 1348, 57-60 (2012) ("*Union Steel I*"), *aff'd*,

713 F.3d 1101 (Fed. Cir. 2013); *see Results of Redetermination Pursuant to Remand* 7-14

(Oct. 14, 2011), ECF No. 49 (Consol. Ct. No. 11-83); *Dongbu Steel Co. v. United States*,

635 F.3d 1363 (Fed. Cir. 2011); *JTEKT Corp. v. United States*, 642 F.3d 1378 (Fed. Cir. 2011).

The CIT held the explanation sufficient to support the Department's statutory construction,

*Union Steel I*, 36 CIT at __, 823 F. Supp. 2d at 1348, and the Court of Appeals affirmed, *Union*

*Steel II*, 713 F.3d at 1105-10.

In the Decision Memorandum accompanying the Final Results, Commerce provided an

explanation for its decision to use its zeroing methodology in the twentieth review.  *Decision*

*Mem.* 31-36.  This explanation is not the same as that held sufficient in *Union Steel I* and

affirmed in *Union Steel II*.  Nevertheless, the court affirms the Department's use of zeroing in

this case.  *Union Steel II* settled definitively the question of whether it is statutorily permissible

for Commerce to apply the zeroing methodology in an administrative review of an antidumping

duty order.

C.  The Voluntary Remand to Allow Commerce to Address NTN's Credit Expenses

In the Final Results, Commerce determined prices of NTN's sales of subject merchandise in the United States using a constructed export price ("CEP").  The starting price for determining CEP is "the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter . . . ."  19 U.S.C. § 1677a(b).  The statute directs Commerce to make certain adjustments to the starting price used to determine CEP, *id.* § 1677a(c), (d), including adjustments for "expenses that result from, and bear a direct relationship to, the sale, such as *credit expenses*, guarantees and warranties," *id.* § 1677a(d)(1)(B) (emphasis added).

NTN alleges that Commerce did not make necessary corrections after NTN submitted a recalculation of its credit expenses.  NTN's Br. 3.  During the review, Commerce requested that NTN update the dates of payments for sales for which NTN received payment during the time between the submission of the original questionnaire response and the filing of the supplemental questionnaire response, and to recalculate NTN's credit expenses based on this updated information (the credit "variable").  *Request for Info. to NTN: Supplemental Questionnaire Sections A-D* at 7 (Nov. 12, 2009) (Japan Public Admin.R.Doc. No. 93).  In response, NTN submitted a new database including the new payment dates (provided in a column designated "PAYDATU") and revised credit expenses (provided in a column designated "CREDITU-1"). NTN's Br. 24; *see NTN's Supplemental Questionnaire Resp.* at 14 & Attach. C-2 (Dec. 11, 2009) (Japan Public Admin.R.Doc. No. 103).  NTN claims that "Commerce inadvertently used the 'CREDITU' variable" included in the original questionnaire response rather than the revised

CREDITU-1 variable NTN provided in its supplemental questionnaire response.  NTN's Br. 24.

NTN alleges that "[t]his error resulted in an inaccurate calculation, which failed to include

revised dates of payments for sales transactions for which NTN received payment between the

original questionnaire response and the supplemental questionnaire response."  *Id.* at 3.

Acknowledging the Department's inadvertent use of the "CREDITU" variable, defendant

submits that "a remand is appropriate for Commerce to correct this inadvertent error."  Def.'s

Opp'n 30.  Granting defendant's request for a voluntary remand is appropriate in this situation

because the Department's concern over the need to ensure a correct calculation of the credit

expenses is substantial and legitimate.  *See SKF USA Inc. v. United States*, 254 F.3d 1022,

1028-29 (Fed. Cir. 2001).

Timken presented an argument opposing NTN's credit expense allegation, arguing that

Commerce had not in fact made an inadvertent error.  Timken's Opp'n 20-22.  In light of

defendant's admission that the use of the "CREDITU" variable was inadvertent, the court does

not find merit in Timken's argument.

### D.  The Department's Application of its Fifteen-Day Rule to NTN

In the *Final Results*, Commerce stated its intention to "issue liquidation instructions to

CBP 15 days after publication of these final results of reviews."  *Final Results*, 75 Fed. Reg.

at 53,663.  NTN challenges the Department's application of the fifteen-day rule to entries of its

merchandise.  NTN's Br. 18-22.

### 1.  The Government's Defense to NTN's Claim Challenging the Application of the Fifteen-Day Rule Is Barred by Collateral Estoppel

NTN cites various decisions by this Court that "consistently held that the 15-day policy is

unlawful because it burdens affected parties and has not been justified by the administrative

record . . . ."  NTN's Br. 21 (citing *SKF USA Inc. v. United States*, 33 CIT 1602, 1618, 659 F.

Supp. 2d 1338, 1351 (2009) ("*SKF III*"); *SKF USA Inc. v. United States*, 33 CIT 1866, 1890,

675 F. Supp. 2d 1264, 1285 (2009) ("*SKF IV*").  The decisions NTN cites involved claims

challenging the fifteen-day rule asserted by a group of related parties, SKF USA Inc., SKF

France S.A., SKF Aerospace France S.A.S., SKF GmbH, and SKF Industrie S.p.A. (collectively,

"SKF").  Like NTN, SKF challenged the application of the fifteen-day rule to implement the

results of the twentieth administrative reviews of the antidumping duty orders on ball bearings

and parts thereof.  *See SKF USA Inc. v. United States*, 37 CIT __, __, Slip Op. 13-131 at 5-9

(Oct. 25, 2013) ("*SKF VI*").  SKF brought a similar challenge to the application of the

fifteen-day rule as applied in the nineteenth administrative reviews.  *See SKF USA Inc. v. United*

*States*, 35 CIT __, __, 800 F. Supp. 2d 1316, 1326-28 (2011) ("*SKF V*").  On SKF's claims in

both the nineteenth and the twentieth administrative reviews, this Court granted SKF a

declaratory judgment that the fifteen-day rule, as applied, was unlawful.  *SKF V*, 35 CIT at __,

800 F. Supp. 2d at 1328; *SKF VI*, 37 CIT at __, Slip Op. 13-131 at 9.  NTN argues that "NTN's

current position is analogous to SKF's in those decisions."  NTN's Br. 21.

    According to the doctrine of collateral estoppel, "once a court has decided an issue of fact

or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a

different cause of action involving a party to the first case."  *Allen v. McCurry*, 449 U.S. 90, 94

(1980) (citation omitted).  The United States Supreme Court "has allowed a litigant who was not

a party to a federal case to use collateral estoppel 'offensively' in a new federal suit against the

party who lost on the decided issue in the first case . . . ."  *Id.*, 449 U.S. at 95 (citing *Parklane*

*Hosiery Co. v. Shore*, 439 U.S. 322 (1979)), so long as the losing party had the "'full and fair

opportunity'" to litigate that issue in the earlier case," *id.* (citing *Montana v. United States*,

440 U.S. 147, 153 (1979); *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,

402 U.S. 313, 328-29 (1971)) (footnote omitted).  Although stating that this Court has held the

application of the fifteen-day rule unlawful in numerous cases, NTN's Br. 21, NTN does not

raise the doctrine of collateral estoppel.  Still, the Supreme Court has indicated that a court may

raise an issue of collateral estoppel *sua sponte* where the matter has not been raised by a party

but where judicial resources have been used in resolving the relevant question.  *Arizona v.*

*California*, 530 U.S. 392, 412-13, *supplemented*, 531 U.S. 1 (2000).  The court concludes that

the precise issue concerning the fifteen-day rule that is raised in this case was decided against the

government in a previous case, that the government had a full and fair opportunity to litigate that

issue, and that the government's defense is, therefore, precluded by the collateral estoppel

doctrine.

    This Court held unlawful the Department's application of the fifteen-day rule to SKF to

implement the results of the twentieth administrative reviews.  *SKF VI*, 37 CIT at __, Slip

Op. 13-131 at 9.  *SKF VI* determined that SKF was entitled, on the basis of collateral estoppel

stemming from this Court's decision in *SKF V*, to a declaratory judgment that the application of

the fifteen-day rule in the twentieth administrative reviews was unlawful.  *SKF VI*, 37 CIT at __,

Slip Op. 13-131 at 5-9.  In *SKF VI*, this Court noted that *SKF V*, on the merits of SKF's claim,

"held that Commerce failed to provide adequate reasoning for its decision to apply its fifteen-day

policy to SKF . . . ."  *SKF VI*, 37 CIT at __, Slip Op. 13-131 at 6.  This Court discussed the

Department's reasoning for applying the fifteen-day rule to implement the results of the

nineteenth reviews, as follows:

> Commerce offers nothing beyond an unsupported conclusion that the 15–day rule
> is reasonable and a recitation of language from a prior decision of this court.
> Missing is any reasoned discussion of the Department's weighing of the
> competing factors that must inform a decision to allow only fifteen days for the
> filing of the summons, complaint, motion for injunction, and, should consent to an
> injunction not be forthcoming, an application for a temporary restraining order.

> While pointing to the six-month deemed liquidation period as the reason for the
> 15–day rule, the Decision Memorandum offers no explanation of why the
> Department decided to afford Customs all but fifteen days of that period in order
> to accomplish the liquidation of entries.

*Id.* at __, Slip Op. 13-131 at 6-7 (citing *SKF V*, 35 CIT at __, 800 F. Supp. 2d at 1328 (citations

omitted in source)).   Concluding that Commerce failed to consider a factor relevant to its

decision, namely, the burden on affected parties in complying with the fifteen-day rule, this

Court awarded a declaratory judgment that the application of the fifteen-day rule to SKF's

subject merchandise in the nineteenth administrative reviews was contrary to law.   *SKF V*,

35 CIT at __, 800 F. Supp. 2d at 1328.   In *SKF VI*, this Court determined that SFK was entitled

to relief on the basis of collateral estoppel "because the Department's rationale for implementing

the final results of the twentieth administrative reviews according to its fifteen-day rule does not

differ materially from the reasoning the court found inadequate as to the nineteenth

administrative reviews."   *SKF VI*, 37 CIT at __, Slip Op. 13-131 at 7 (comparing *Decision

Mem.* 30 and *Issues & Decision Mem. for the Antidumping Duty Admin. Reviews of Ball

Bearings & Parts Thereof from France, Germany, Italy, Japan, & the United Kingdom for the

Period of Review May 1, 2007, through April 30, 2008* at 12, A-100-001, ARP 04-08,

(Aug. 25, 2009), *available at* http://enforcement.trade.gov/frn/summary/multiple/E9-20980-1.pdf

(last visited Jan. 28, 2015) ("*Decision Mem. (AR 19)*")).

The court concludes, on the basis of collateral estoppel, that the application of the

fifteen-day rule in the twentieth administrative was unlawful as applied to NTN.   The

Department's decision and rationale for implementing the final results of the twentieth

administrative reviews according to the fifteen-day rule were applied to all respondents in the

twentieth reviews, including NTN and SKF.   *See Final Results*, 75 Fed. Reg. at 53,663; *Decision*

*Mem.* 30-31.  In other words, there was no individualized decision to apply the fifteen-day rule to each separate party.

In the decision memorandum accompanying the twentieth reviews, Commerce offered the same three reasons in support of its fifteen-day rule that it offered for the nineteenth reviews. With respect to both sets of reviews, Commerce described its fifteen-day rule as "based upon administrative necessity" due to the holding in *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1273 (Fed. Cir. 2002), under which the six-month period for liquidation of entries by Customs established by 19 U.S.C. § 1504(d) begins from the publication of the final results of an administrative review.[4]  *Decision Mem.* 30; *Decision Mem. (AR 19)* at 12.  In both decision memoranda, Commerce stated that "[e]xtreme consequences follow from deemed liquidation, specifically the government's inability to collect duties calculated."  *Decision Mem.* 30; *Decision Mem. (AR 19)* at 12.  In each instance, Commerce also stated that its revised fifteen-day rule, which modified its previous practice of issuing liquidation instructions within fifteen days of publishing final results, accords with this Court's decision pertaining to the sixteenth administrative reviews that the right provided in 19 U.S.C. § 1516a(c)(2) implies "'some reasonable opportunity in which a plaintiff may seek to obtain the specific type of injunction described'" in the statute.  *Decision Mem.* 30; *Decision Mem. (AR 19)* at 12 (both citing *SKF USA Inc. v. United States*, 33 CIT 370, 385, 611 F. Supp. 2d 1351, 1364 (2009) ("*SKF II*")).  The remaining discussion of the fifteen-day rule in the decision memoranda for both the twentieth and nineteenth administrative reviews focuses on refuting arguments made by

---

[4] Under section 504(d) of the Tariff Act, 19 U.S.C. § 1504(d), an entry is generally treated as liquidated at the "duty, value, quantity, and amount of duty asserted by the importer of record" if not liquidated within six months of the date U.S. Customs and Border Protection receives notice from Commerce or another appropriate agency, or a court with jurisdiction over the entry, that suspension of liquidation required by statute or court order has been removed.

SKF.  These two highly similar discussions do not allow the court to conclude that the issue

decided as to the nineteenth administrative reviews differs from the issue presented for review in

the litigation contesting the fifteen-day rule as applied to implement the twentieth administrative

reviews.  Therefore, the court concludes that the United States has had the "full and fair

opportunity" to litigate the issue of the permissibility of the application of the fifteen-day rule

and that collateral estoppel bars the government's defense to the claim NTN brings in this case.

### 2.  Only Declaratory Relief is Available on NTN's Claim Challenging the Fifteen-Day Rule

Despite the Department's decision to apply its fifteen-day rule, NTN successfully

obtained an injunction preventing liquidation of entries of its subject merchandise.  *See* Order

(Sept. 27, 2010), ECF No. 16 (granting consent motion for preliminary injunction).  Therefore,

the only relief available to NTN is a declaratory judgment that the fifteen-day rule was contrary

to law as applied to NTN in the twentieth administrative review.

NTN seeks relief beyond a declaratory judgment.  NTN's Br. 22 ("In light of the fact that

Commerce has continually applied an unsupported policy in numerous administrative reviews in

the face of the declaratory judgments issued by this Court, another declaratory judgment would

clearly be inadequate.").  Citing a November 2010 announcement concerning the fifteen-day rule

issued by Commerce (the "Announcement") and referring to 19 U.S.C. § 1516a(a)(2)(A), the

statutory provision allowing a party thirty days to file a summons in order to commence an

action to contest the final results of an administrative review and an additional thirty days to file

a complaint, NTN requests that the court "require Commerce to revise the November

Announcement to conform with the statute and allow interested parties to use the full

statutorily-provided timeframe."  NTN's Br. 22; *see also id.* at 21 (citing 19 U.S.C.

§ 1516a(c)(2)); *id.* at 5 (citing 19 U.S.C. § 1516a(a)(2)(A)).  In the Announcement, of which the

court takes judicial notice for purposes of ruling on NTN's requested relief, Commerce put forth

an explanation for its continuing to apply the fifteen-day rule.[5]  *See Announcement Concerning*

*Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews, Nov. 2010*

(Nov. 9, 2010), *available at* http://enforcement.trade.gov/download/liquidation-announcement-

20101109.html (last visited Jan. 28, 2015) ("*Nov. 2010 Announcement*").  NTN argues that the

Announcement "adds nothing substantively to the administrative record" and that neither the

record nor the Announcement "indicate[s] that Commerce considered the relevant, competing

factors *on both sides* of the issue, as required by this court."  NTN's Br. 22.  NTN complains that

Commerce highlights only the statutory deadline for Customs to complete liquidation, 19 U.S.C.

§ 1504(d), which, according to NTN, does not alone justify "divvying up the overwhelming

majority of time to Customs without reference to the burden on the plaintiffs."  *Id.*

---

[5] In the November 2010 Announcement, Commerce states that the fifteen-day rule
"balances the factors which Commerce must consider in the effective administration of the
antidumping and countervailing duty laws," including the time frame in which parties may allege
ministerial errors and the deemed liquidation period of six months.  *See Announcement
Concerning Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews,
Nov. 2010* ¶ 2 (Nov.  9, 2010), *available at* http://enforcement.trade.gov/download/liquidation-
announcement-20101109.html (last visited Jan. 28, 2015) ("*Nov. 2010 Announcement*").  The
Announcement submits that the fifteen-day rule allows CBP sufficient time to ensure that entries
are liquidated at the proper rate in complicated cases involving many or mixed entries, adding
that "while CBP may not need five and a half months to liquidate entries in every case,
Commerce must establish a uniform system to maximize the chances that liquidation will occur
at the proper rate in most cases."  *Id.* at ¶ 3.  Commerce adds that under its "normal practice," it
releases the final results of a review to interested parties on the day after the notice is signed by
the Assistant Secretary, which may be a week and sometimes more, before Commerce publishes
the final results.  *Id.* at ¶ 4.  The announcement claims that interested parties will "have usually
had at least 22 days to read and review the final results before Commerce has issued liquidation
instructions."  *Id.*  Finally, Commerce states that because Commerce publishes the preliminary
results well in advance of the final results, "[t]he parties are thus aware of the issues which they
may be interested in litigating well before the final results are released, much less published in
the *Federal Register*."  *Id.*

The court cannot grant NTN's requested relief regarding the November 2010 Announcement.  The court's review in this action is limited to the claim NTN has asserted in Count II of its amended complaint, which is an APA challenge to the Department's "determination to send liquidation instructions to Customs and Border Protection prior to the time allowed by law for initiating judicial review of the publication of the final determination . . . ."  Am. Compl. ¶ 32.[6]  The determination that NTN challenges occurred in September  2010.  The court must review that determination according to the reasoning Commerce provided at the time it announced its decision, which is contained in the Decision Memorandum for the Final Results of the twentieth administrative review.  Commerce published the Announcement in November 2010, after publishing the Final Results of the twentieth reviews, and by incorporation, the accompanying Decision Memorandum, on September 1, 2010. *Compare Nov. 2010 Announcement*, *with Final Results*, 75 Fed. Reg. at 53,661.  The court, therefore, cannot compel Commerce to modify the terms of the Announcement in this litigation.

Nor may the court, as NTN urges, "require Commerce . . . [to] allow interested parties to use the full statutorily-provided timeframe" before issuing liquidation instructions.  NTN's Br. 22.  According to NTN, "[t]o hold otherwise would merely permit the unwarranted 'race to the courthouse' decried by this Court and would instead allow this issue to be litigated senselessly and circularly for years to come."  *Id*.  Similarly, NTN argues that "Commerce's policy of issuing liquidation instructions within 15 days is unlawful, given that it does not permit a party a reasonable time to seek an injunction as intended by 19 U.S.C. § 1516a(c)(2)" and that "[t]his court has consistently held so."  NTN's Br. 21.  These arguments are grounded in part on

---

[6] Although NTN amended its complaint in 2011, it made no changes to the claim stated in Count II of its original complaint.  *Compare* Am. Compl. ¶¶ 27-32, *with* Compl. ¶¶ 27-32.

decisions issued by this Court rejecting the Department's previous policy or practice of issuing

liquidation instructions *within* the fifteen-day period, not the fifteen-day rule that was applied in

the twentieth review, under which Commerce issues the liquidation instructions to CBP *after* the

close of the fifteen-day period.  *See* NTN's Br. 21 (citing *SKF USA Inc. v. United States*,

31 CIT 405, 411 (2007) ("*SKF I*"); *SKF II*, 33 CIT at 385-89, 611 F. Supp. 2d at 1364-67).  The

decisions that NTN cites concerning the revised fifteen-day rule did not hold that the fifteen-day

rule at issue here is precluded, *per se*, by 19 U.S.C. § 1516a(c)(2).  *See* NTN's Br. 21 (citing

*SKF III*, 33 CIT at 1616-17, 659 F. Supp. 2d at 1350-51; *SKF IV*, 33 CIT at 1884, 675 F.

Supp. 2d at 1282; *SKF v. United States*, 34 CIT, __, __, Slip Op. 10-57 at 7-8 (May 17, 2010)).

This Court has declined to hold that 19 U.S.C. § 1516a(c)(2) requires a specific time period in

which a party may seek an injunction.  *See*, *e.g.*, *SKF III*, 33 CIT at 1615-17, 659 F. Supp. 2d

at 1349-51.  Nor does NTN include a separate argument that the fifteen-day rule at issue here is

*per se* precluded by the language and purpose of 19 U.S.C. § 1516a(c)(2), and the court declines

to so hold.

<u>3.  The Court Rejects the Arguments Defendant Raises Against NTN's Claim Relating to the
Fifteen-Day Rule</u>

   Defendant raises various arguments as to why the court should reject NTN's claim

addressed to the fifteen-day rule.  The court rejects these arguments.

   Defendant raises an argument that NTN lacks standing to bring its claim, an argument

upon which defendant previously sought dismissal.[7]  This Court has held repeatedly that a party

---

   [7] In *NTN Corp. v. United States*, 35 CIT __, __, Slip Op. 11-129 at 4 (Oct. 17, 2011)
("*NTN II*"), this Court denied as moot a motion to dismiss in which defendant argued that NTN
lacked standing to challenge the fifteen-day rule because NTN had filed an amended complaint.
*Id.*  Defendant did not move again to dismiss after NTN filed an amended complaint.
Nevertheless, plaintiffs and defendant continue to raise arguments concerning standing.  Pl.'s Br.
(continued . . .)

situated as NTN is in this case has standing to challenge the application of the fifteen-day rule.

As NTN notes, "[t]he Court has ruled in at least five cases that a similarly-situated party has

standing to challenge the 15-day policy, recognizing that the policy injures parties in a way that

is capable of repetition yet evades review."  NTN's Br. 19 (citing *SKF I*, 31 CIT at 411-12;

*SKF II*, 33 CIT at 384 & n.9, 611 F. Supp. 2d at 1363 & n.9; *SKF III*, 33 CIT at 1613-14, 659 F.

Supp. 2d at 1347-48; *SKF IV*, 33 CIT at 1886, 675 F. Supp. 2d at 1282).  Due to the burden of

filing a summons and a complaint and obtaining an injunction against liquidation within fifteen

days of publication, the application of the fifteen-day rule caused an adverse effect on NTN

following publication of the final results of the twentieth reviews that is capable of repetition in

future reviews.  NTN, therefore, has shown an "injury in fact" sufficient for standing to

challenge the application of the fifteen-day rule under the APA even though NTN avoided

another form of harm by obtaining an injunction against liquidation of its entries in the twentieth

reviews, and even though it may be able to obtain such injunctions in subsequent reviews.  The

court concludes that NTN has standing here to assert its claim challenging the application of the

fifteen-day rule.

Defendant next raises a series of arguments as to why the fifteen-day rule is a permissible

exercise of the Department's discretion.  Def.'s Opp'n 25-30.  In doing so, defendant attempts to

raise arguments to justify the fifteen-day policy on the merits.  The court need not, and does not,

reach these arguments because it is ruling in favor of NTN, and against the government, on the

ground of collateral estoppel.

---

(continued . . .)

in Supp. of its Mot. for J. on the Agency R. 18-21 (Dec. 16, 2011), ECF No. 69-1; Def.'s Opp'n
to Pls.' & Pl.-Intervenors' Mots. for J. Upon the Agency R. 20-25 (Mar. 16, 2012), ECF No. 76.

For the reasons the court has discussed, the court will adjudicate NTN's claim relating to the fifteen-day rule by awarding declaratory relief that the fifteen-day rule is contrary to law as applied to NTN in the twentieth reviews.  The court intends to grant this relief at such time as judgment is entered in this case.

### III.  CONCLUSION AND ORDER

For the reasons discussed above, and in consideration of all submissions filed herein, and upon due deliberation, it is hereby

**ORDERED** that the final determination ("Final Results") of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in *Ball Bearings and Parts Thereof From France, Germany, Italy, Japan, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, Final Results of Changed-Circumstances Review, and Revocation of an Order in Part,* 75 Fed. Reg. 53,661 (Int'l Trade Admin. Sept. 1, 2010), be, and hereby is, remanded for reconsideration and redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that application of the "zeroing" methodology by the Commerce in the Final Results, be, and hereby is, affirmed; it is further

**ORDERED** that defendant's request for a voluntary remand to Commerce for correction of an error relating to NTN's credit expenses, Def.'s Opp'n to Pls.' & Pl.-Intervenors' Mots. for J. Upon the Agency R. 30 (Mar. 16, 2012), ECF No. 76, be, and hereby is, granted; it is further

**ORDERED** that Commerce submit a remand redetermination pursuant to its request for a voluntary remand within ninety (90) days of the issuance of this Opinion and Order, in which it redetermines, as necessary, the weighted-average dumping duty margin to be assigned to NTN; it is further

**ORDERED** that NTN and Timken shall have thirty (30) days from the date of the remand redetermination in which to file comments on the remand redetermination; and it is further

**ORDERED** that, should NTN or Timken file comments in opposition to the remand redetermination, defendant shall have fifteen (15) days in which to reply to such comments.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: February 3, 2015
         New York, NY